## CITIZENS AND SOUTHERN NATIONAL BANK, executor, v. WARE.

No. 11736. April 13, 1937. Rehearing denied June 21, 1937.

*Alston, Alston, Foster & Moise* and *Henry J. Miller,* for plaintiff in error.

*James A. Branch* and *Thomas B. Branch, Jr.,* contra.

Jenkins, Justice. Mrs. Abba Bowen Ware filed her petition against the Citizens and Southern National Bank as executor, for the reformation of a contract, and for other relief. The petition alleged that the plaintiff and another person had a cruise made of the timber on lands of the estate represented by the defendant, and that the person whom they employed to cruise and estimate such timber furnished them with a signed estimate which showed that there were approximately 3,471,500 feet of merchantable timber on the lands, and which was furnished to the defendant; that plaintiff was without experience in such a matter, and relied upon the person making the estimate; that, so relying, on January 12, 1934, she wrote to the defendant a letter, quoted in the petition, offering to pay $14,000 for the timber on the terms stated; that on January 17, 1934, the defendant wrote to the plaintiff a letter making a counter-proposal, as quoted in the petition, referring to plaintiff's letter offering to purchase 3,471,- 500 feet of merchantable timber owned by the estate, as shown by the estimate of the person employed by the plaintiff, and stating: "We are inclined to believe that the estate's share of timber on the tracts of land enumerated will exceed 3,471,500 feet; hence we propose obtaining a further estimate by a competent, disinterested cruiser, reserving the right to proportionately increase the sale price by the increase in feet shown by his estimate. If such

estimate shows less than 3,471,500 feet, you may complete the trade at $14,000, or withdraw your offer as you may decide, within the time limit herein specified. . . If this counter-proposal is acceptable to you, please advise us promptly in order that we may arrange to have a cruise made within the next few days. It is, of course, understood that any expense of such cruise shall be borne by the estate."

The petition further alleges: On January 27, 1934, the defendant wrote to the plaintiff another letter, as quoted, calling attention to certain discrepancies in the original estimate, and stating: "The price we discussed for this timber was $3.00 per thousand for the short leaf and $4.50 per thousand for the long leaf, which on a basis of Mr. Smith's estimate will amount to $15,522. However, as stated in our letter of January 17, we agreed to sell 3,471,500 feet for $14,000, which gave us, on a basis of his estimate, a price of $3.00 for the short leaf and $4.32 for the long leaf, or an average price of $4.03. In our letter we stated that in event of an increase in the estimate the sale price would correspondingly increase. Accordingly, Mr. Smith's cruise corrected as indicated above shows an increase of 264,500 feet over his original estimate, which, figured at the rate of $4.03 per thousand will increase our sale price by $1,065.93. Therefore we offer to conclude the sale on a basis of $15,000 flat. The estimate of the cruiser employed by the estate showed a total of 3,763,000 feet, and it seems to us that the difference is not sufficient to suggest any further parley as to the amount of timber; consequently it is agreeable to us to accept as a basis for sale the lower appraisal. Please let us know promptly whether or not you will accept this proposal, in order that we may arrange for preparation of the necessary contract with as little delay as possible." On January 30, 1934, the plaintiff wrote to the defendant a letter as quoted, accepting the last-stated proposition, and referring to the offer to sell for $15,000 flat the timber which was estimated to be 3,763,000 feet, on the terms stated, and asking that the defendant "prepare the necessary contracts, also mortgage and notes," for plaintiff's signature. On February 1, 1934, the defendant wrote to the plaintiff a letter stating: "We have received Dr. Ware's letter of January 30, in which he informs us that . . you have accepted and will carry out the terms of the proposal contained in

our letter of January 17, as amended by our letter of January 27. We have written to Mr. J. C. McDonald to-day, outlining the terms of our proposal and your acceptance, and have requested him to prepare appropriate contract, notes, and deed of conveyance necessary to complete this transaction. Please get in touch with Mr. McDonald, urging that he give the matter prompt attention." Mr. McDonald, "referred to in the letter just above quoted, was the attorney for the defendant." He "prepared a contract which was executed by petitioner and by the defendant, a copy of said contract being attached to and made a part of the petition. The contract, executed by the parties in February, 1934, recited a consideration of $15,000 as the purchase-price for "the merchantable timber; that is, timber which is eight inches in diameter fifteen inches from the ground, and larger," located on the described lots of land. It specified the terms of payment, and the time, conditions, and terms of the cutting and possession of the land for this purpose. It further provided: "It is understood and agreed, however, that no representation has been made as to the quality or quantity of the timber hereby sold, and party of the second part is buying the same on her own judgment and after having had an estimate made by her own agent; and the party of the first part, its successors, or assigns shall in no event be liable for any deficiency in the quantity or quality of the timber hereby sold." The contract did not mention or otherwise refer to the quantity or estimated quantity of timber, or to any previous letters or negotiations.

The petition further alleges that the contract of sale was based on the belief of both parties that there were on the land 3,736,000 feet of merchantable timber, and on the agreed price of $4.03 per thousand feet; and that it developed that there were in fact only approximately 2,000,000 feet of merchantable timber, with a shortage of approximately 1,500,000 feet under the estimate upon which both parties acted in good faith when the contract was made. As to any fraud, the plaintiff merely alleges that she "relied and depended upon the defendant and its attorney to prepare a contract which would carry into effect the agreement which had been reached," that she "was a woman of very limited business experience, and had practically no experience in the timber or lumber business;" that she "was in very bad health at the time she made

the contract," and she "imposed implicit faith and confidence in the defendant and in its attorney, and relied upon them to reduce to written and legal form the true agreement which petitioner and the said defendant had entered into with respect to said timber." However, she expressly negatives the existence of any fraud, by the immediately following averments: "Petitioner does not now believe, or charge, that the defendant or . . its attorney intentionally did, or would, mislead or defraud petitioner in any way; but petitioner does allege that if she were compelled to pay the defendant a large amount as a result of the mutual mistake under which she and the defendant both acted in entering into said contract, the result would, in effect, be a legal fraud upon petitioner." She prayed that the contract should be so reformed as to provide for the payment by her on the basis of the alleged actual amount of approximately 2,000,000 feet of timber at $4.03 per thousand feet.

The defendant demurred to the petition on the ground that it set out no cause of action to reform the contract, and on special grounds. The court overruled the general grounds, and withheld determination of the special grounds.

In the absence of fraud, accident, or mistake, all unambiguous and consistent provisions of a contract, not contrary to law or against public policy, will be given effect. Accordingly, even though it be made to appear by the correspondence leading up to the execution of a written contract of sale, sought to be reformed, that the parties thereto, by virtue of separate and independent estimates made by each, had reached about the same conclusion as to the quantity of the commodity embraced by the contract, and that the amount of the consideration was arrived at on that basis, yet where the contract itself specifically declares that "no representation has been made as to the quality or quantity of the timber hereby sold, and [the purchaser] is buying the same on her own judgment and after having had an estimate made by her own agent, and [the seller] its successors, or assigns shall in no event be liable for any deficiency in the quantity or quality of the timber hereby sold," equity will not interfere, under the guise of correcting a mutual mistake of fact, so as in effect to nullify the quoted provision of the contract by which the parties themselves had expressly provided for the happening of the very contingency

which the purchaser in her petition to reform says did happen. The alleged underestimate by each of the parties in the quantity of the commodity sold can not be dealt with as a mutual mistake of fact, such as would authorize a reformation of the contract, where it thus appears by the instrument itself that the contingency that such estimates might be in fact erroneous was in the minds of the contracting parties at the time the agreement was signed, and that an express stipulation was embodied therein, providing a method of meeting such contingency if it should in fact arise. If the plaintiff by her petition, instead of expressly negativing fraud on the part of the defendant, had averred that the alleged shortage in quantity of the commodity sold was known to the defendant at the time the agreement was signed, and that it nevertheless fraudulently induced and permitted the plaintiff to act to her injury under a mistaken belief as to the facts, then the rule would be different; and even such a provision in the contract as that quoted would not absolve the defendant from the guilt of fraud or render the plaintiff remediless, since the perpetrator of a fraud would not be permitted to forestall the reformation of a contract so procured, by any sort of prohibitory provision therein contained. A contract procured by fraud can not be fortified against attack by simply declaring itself immune. *Beasley* v. *Huyett &c. Co.*, 92 *Ga.* 273, 279 (18 S. E. 420); *Schofield* v. *Burns*, 178 *Ga.* 186 (172 S. E. 569).

*Judgment reversed. All the Justices concur.*